UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

      v.                            **Docket No. 06-CR-406M**

**ORLANDO HALE**

                                    **(JMF)**

    **Defendant.**

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Orlando Hale, by and through undersigned counsel, respectfully submits this memorandum in aid of sentencing:

**I.    INTRODUCTION**

Orlando Hale stands before the court having entered a pre-indictment plea to a single count of deprivation of rights under color of law (misdemeanor) in violation of 18 U.S.C.§ 242. The charge herein arises out of the performance of Mr. Hale's duties as a seventeen year veteran of the Metropolitan Police Department. As part of the plea agreement in this case Mr. Hale has tendered his resignation from the Department and agreed that a copy of the plea agreement and the statement of the offense will be placed in any official personnel file that is maintained by the MPD or the District of Columbia government.

The **Pre-Sentence Investigation Report** herein concludes that the statutorily authorized maximum sentence of 12 months is the guideline sentence since it is less than the minimum of the applicable guideline range pursuant to U.S.S.G. § 5G1.(a).

As the above referenced guideline sentence falls in Zone D of the Guideline sentencing provisions, 12 months must be spent in prison. Id.§ 5C1.1(f).

The Defendant asserts that the facts in this case warrant a downward departure pursuant to U.S.S.G. § 5K2.20 for aberrant behavior and will ask the Court to impose a sentence of probation or in the alternative a sentence of a duration that would allow the Defendant to serve the punitive portion of his sentence in home detention. Finally, Defendant also argues that a sentence within the Guideline Range recommended by the **Pre-Sentence Investigation Report** would not be reasonable when the "***Factors to be Considered in Imposing a Sentence"*** set forth in 18 U.S.C. §3553(a) are considered.

This Memorandum will address these issues and outline additional mitigating facts to be considered by the Court.

## II.    STATEMENT OF FACTS

As part of the plea agreement, the parties did stipulate to a **STATEMENT OF THE OFFENSE** repeated verbatim below.

> In November of 2005, the defendant, Orlando Hale, was employed as a sworn law enforcement officer with the District of Columbia's Metropolitan Police Department. At that time, Officer Hale had been employed by MPD for more than sixteen years. On November 24, 2005, at approximately 2:30 a.m., a police dispatcher notified officers that there was a man threatening a woman with a gun inside of an apartment building located at 2715 Robinson Place, S.E., Washington, D.C. Officer Hale was on duty that morning, and he responded to the call. Officer Hale was driving a marked police cruiser, and in uniform.
>
> Officer Hale and other uniformed officers arrived at the apartment building, where they encountered the suspected gunman, Robert Colbert. Another officer handcuffed Mr. Colbert while Officer Hale and other officers investigated the allegation that Mr. Colbert had threatened his girlfriend with a handgun. The officers proceeded to search Mr. Colbert's apartment for the gun. During this time, Mr. Colbert remained handcuffed, and was ultimately

2

seated on the living room floor of the apartment. Ofc. Hale asked Mr. Colbert where the gun was several times, and Mr. Colbert led the officers to a cigarette lighter that was shaped like a gun.

   Officer Hale did not believe that this was the weapon that was used in in the assault, and he and the other officers continued to look for a handgun inside the apartment. Mr. Colbert remained seated on the floor with his hands handcuffed behind his back. Mr. Colbert was compliant and did not pose any threat to the officers who were on the scene. An officer who was assisting Ofc. Hale then found a loaded Talon 9mm handgun inside one of the apartment's bedrooms, and announced his find to his fellow officers, including Officer Hale. Ofc. Hale then walked over to Mr. Colbert, stood over him, and stated "why did you lie to me," or words to that effect. Ofc. Hale then made a fist with his right hand, and struck Mr. Colbert in the facial area with his fist approximately 2-3 times. The assault lasted a few seconds, and Ofc. Hale voluntarily ended the assault of Mr. Colbert.

Ofc. Hale maintains that in addition to the above stipulated facts that upon the discovery of the real firearm by one of his colleagues he approached Mr. Colbert asking why he lied to him. He maintains that Mr. Colbert responded with the "f- word", triggering an inappropriate and unprecedented explosion of rage by Ofc. Hale coupled with his physical assault of Mr. Colbert. Ofc. Hale voluntarily stopped striking the complainant and there is no indication or evidence that this was anything but an unfortunate and spontaneous incident.

At the time of this incident Ofc. Hale was experiencing marital discord with his current wife, Betty Halmon-Hale. The source of that discord was the failure of his minor daughter Jasmin to accept the recent marriage between her father and Mrs. Halmon-Hale. Just prior to getting the instant radio run Ofc. Hale had a phone conversation with Ms. Halmon-Hale who was pressuring Ofc. Hale to choose between his love for his daughter, who was acting out as the result of her parent's divorce, and

3

Ms. Hallmon-Hale. The parties argued about this issue just prior to Ofc. Hale taking this radio call. The interplay between Ofc. Hale, his daughter Jasmin, her mother, Cynthia Truesdale and Ofc. Hale's now former second wife Ms. Halmon-Hale was a source of emotional trauma for all concerned and had a direct correlation to Ofc. Hale's conduct on the evening of this offense.

After Ofc. Hale's assault on Mr. Colbert ended and while the two of them were waitng for a transport vehicle to arrive Ofc. Hale apologized to Mr. Colbert for striking him and acknowledged that his conduct was wrong. He also talked to Mr.Colbert about his conduct (threatening his girlfriend with a weapon). Mr. Colbert accepted his apology and acknowledged he had lost his cool when during an argument with his girlfriend she had spit in his face.  As outlined in the **Pre-Sentence Investigation Report** in paragraph 11. Mr. Colbert sustained a bruised lip as a result of the assault.

In seventeen years with MPD Ofc. Hale has an exemplary service record with no prior allegations of misconduct or use of excessive force, no civilian complaint review board allegations and numerous commendations. Ofc. Hale also has numerous certifications as outlined in paragraph 49 of the **PSI.**

There is also significant documentation from both the Metropolitan Police Department Employee Assistance Program and from his treating psychotherapist Dr. Michael B. Rose as outlined in paragraph 42 of the **PSI** that the family discord Ofc. Hale was experiencing at the time of this incident was a major source of stress for him and contributed greatly to his conduct on the day in question. That documentation shows that Ofc. Hale had sought professional assistance for

the stress he was experiencing either prior to or contemporaneous with the time period of this offense.

III. **ARGUMENT**

    A. **Defendant Is Entitled To A Downward Departure Pursuant U.S.S.G. § 5K2.20 For Aberrant Behavior.**

The Court may depart downward based on aberrant behavior if several specific criteria are present. All are present in this case. U.S.S.G. § 5K2.20 list those criteria as:

The defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law abiding life.

A line of Seventh Circuit cases that illuminate the above criteria are referred to in the case of U.S. v. Bradley, 196 F.3d 762 (7th Cir. 1999). It stated:

> We have previously recognized that if a criminal act constitutes a single instance of aberrant behavior, a defendant may receive a downward departure under the United States Sentencing Guidelines. *See* United States v. Partee, 31 F.3d 529, 533 (7th Cir.1994); United States v. Andruska, 964 F. 2d 640, 646 (7th Cir. 1992); United States v. Carey, 895 F.2d 318, 325 (7th Cir. 1990). For conduct to qualify as "aberrant behavior," it must be "more than merely something 'out of character' or the defendant's first offense." Carey, 895 F.2d at 325. Rather, the criminal conduct must be something in the nature of a spontaneous, sudden, or unplanned act. Partee, 31 F.3d at 534; Andruska, 964 F.2d at 646.

The District of Columbia Circuit outlined it's adoption of the Seventh Circuit approach in Dyce v. United States, 91 F.3d 1462,(D.C. Cir. 1996) when it stated

5

" We share the view of the Fifth and Seventh Circuits; the Ninth Circuit's approach would have the effect of converting any first crime into an aberration.

Each of the above listed criteria are present where as here an exemplary police officer with a lengthy and spotless career succumbs to a momentary loss of control due to forces outside of the law enforcement situation he faced at the time. This brief lapse in judgment and self control has caused the Defendant to forfeit the only career he has known for the last seventeen years along with his retirement pension and other benefits he depended on. The spontaneous circumstances of the offense, the timing of the stressful family situation, and Ofc. Hale's actions while waiting for the transport to arrive, the absence of any serious injury to Mr. Colbert and the fact even with an early plea and acceptance of responsibility the Defendant's guideline sentence would be the statutory maximum sentence of 12 months in prison combine to render such a sentence particularly harsh and this case an extraordinary circumstance warranting a downward departure for aberrant behavior.

There is further illuminating language about the Sentencing Commission's intent in enacting § 5K2.20 departures to be found in U.S. v. Guerrero, 333 F.3d 1078 ( 9th Cir. 2003) stating " the sentencing court must conduct two separate and independent inquiries, both of which the defendant must satisfy before a departure can be granted. That is, the court must determine whether the defendant's case is extraordinary and whether his or her conduct constituted aberrant behavior." United States v. Castano-Vasquez, 266 F.3d 228, 235 (3d Cir. 2001); see also, United States v. Jiminez, 282 F.3d 597, 602 (8th Cir. 2002).

Defendant submits that both thresholds are met by the instant facts and thus it would be appropriate for the Court to grant the aberrant behavior downward departure sought herein as the guidelines as applicable to the charges herein do not adequately contemplate the disparity in the severity of punishment for a felony count as opposed to a misdemeanor count of deprivation of rights under color of law.

      **B.** **If The Court Does Not Apply U.S.S.G. § 5K2.20, The Guideline Sentence Set Forth In The Pre-Sentence Investigation Report Would Not Be Reasonable After Consideration Of The Factors To Be Considered In Imposing A Sentence Under 18 U.S.C. 3553.**

As a result of the Supreme Court's ruling in <u>Booker v. United States</u>, 542 U.S. 220(2005), the United States Sentencing Guidelines are no longer mandatory but are rather one factor to be considered in determining a reasonable sentence in a criminal case. The 180 degree change in the use of the sentencing guidelines mandated by <u>Booker</u> have already been developed further in this Circuit, expressed most clearly by Judge Henderson in her concurring opinion in <u>United States v. Price</u>, 409 F.3d 436 (D.C. Cir., 2005), in which she observed that :

> The district court's duty to consult the Guidelines is, however, quite different from the previous duty to apply them mandatorily. Now, in setting a particular sentence, the district court must "take account of the Guidelines together with other sentencing goals." (Citation to <u>Booker</u> omitted). This means that the district court *must* consider the criteria set forth in *section 3553(a)*, including the Guidelines sentencing range established for "the applicable category of offense committed by the applicable category of defendant" as well as policy statements of the Sentencing Commission. [citations omitted]… **What the practical difference between the duty to consult the Guidelines and the duty to apply them means under the "reasonableness" standard of review will emerge only on a**

>**case-by-case basis.** But it is clear that the duty to consult the Guidelines neither reduces them to "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." <u>United States v. Crosby</u>, 397 F.3d 103, 113 (2d Cir. 2005), nor maintains de facto the mandatory sentencing regime declared unconstitutional in <u>Booker</u>,…"

<u>United States v. Price</u>, <u>supra</u> at 446 (concurring opinion of Karen L. Henderson, Circuit Judge. (Emphasis added).

The Court succinctly paraphrased those § 3553(a) "***factors to be considered in imposing a sentence***" to include, but not limited to, the following:

[1]   The nature of the offense;

[2]   The Defendant's history;

[3]   The need for the sentence to promote adequate deterrence;

[4]   [The need] to provide the Defendant with needed educational or vocational training;

[5]   Any pertinent policy statements issued by the Sentencing Commission;

[6]   The need to avoid unwarranted sentencing disparities among similarly situated Defendants;

[7]   The need to provide restitution to any victims.

<u>Id.</u> at 442.

An examination of those factors in light of the facts of this case and the circumstances described in Part III(A) of this Memorandum, demonstrate that the guideline sentence of 12 months incarceration would not result in a reasonable sentence when applied to this Defendant.

Defendant respectfully submits that there is nothing in the facts of this case nor

in the Defendant's personal background and history which would lead to the just and fair conclusion that a sentence of imprisonment of 12 months is reasonable. Defendant will not belabor each factor nor repeat what is already before the Court in the **Pre-Sentence Investigation Report.** A brief mention of the pertinent factors will suffice.

    1.    **<u>Nature of the Offense</u>**- There is no evidence that the assault by the Defendant on Mr. Colbert was in any way premeditated, of long duration, resulted in serious injury to the complainant, was one of many similar types of conduct on other arrestees by Ofc. Hale and there is arguably some expression of remorse to victim while still in Ofc. Hale's custody although that is not corroborated by any evidence in the possession of the Government.

    2.    **<u>History and Characteristics of the Defendant</u>**- Ofc. Hale's personal history is described in detail at paragraphs 29 through 49 of the **Pre-Sentence Investigation Report.** He has no criminal history. He has a high school diploma from Ballou Sr. High School. Ofc. Hale is recently divorced from his second wife Betty Halmon-Hale and is residing with his daughter Jasmin who is a high school senior. He is a lifelong resident of the District of Columbia who maintains a cordial relationship with his first wife Cynthia Truesdale. The two of them have worked diligently to help Jasmin overcome the trauma of the demise of their marriage.

    3.    **<u>The Need for the Sentence to Promote Adequate Deterrence</u>**- This factor has been well served by all of the ancillary consequences of the conviction

including the loss of career, pension, and earning capacity. Ofc. Hale faces financial ruin, and constant embarrassment on any occasion he sees one of his former colleagues. He must rebuild his life by finding a new career at the age of 44 at a time when his daughter has aspirations of attending college.

### 4. The Need to avoid Unwarranted Sentencing Disparities

Defendant's conduct in this case represents a serious breach of his oath as a a sworn law enforcement officer, however it falls short in terms of the egregiousness of the behavior of the " heartland" of cases brought under 18 U.S.C. § 242 both felony and misdemeanor where there is a broad continuum of conduct that could subject a public official to criminal liability. The specific characteristics of this case make a a sentence below the guideline sentence far more reasonable than the one year sentence that represents the statutory maximum sentence.

## IV    CONCLUSION

For the foregoing reasons, Defendant respectfully submits that he should receive a downward sentencing departure pursuant to U.S.S.G. § 5K2.20 to a sentence of probation or in the alternative to a level where the Defendant would be eligible to serve any sentence in home detention and that the guideline sentence of 12 months imprisonment as calculated by United States Probation would not be reasonable under Booker v. United States, 542 U.S. 220 (2005) and 18 U.S.C. §3553(a).

                                                  Respectfully submitted,

                                                  _____
                                                  Harold D. Martin, # 368939

>Robert Ades & Associates, P.C.
>1140 Connecticut Avenue, N.W.
>Suite 1100
>Washington, D.C. 20036
>(202) 452-8080
>e-mail: hdmartin2@aol.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 8th day of December 2006, I transmitted by first class mail and facsimile a copy of the foregoing Defendant's Memorandum In Aid Of Sentencing to:

John Cummings, Esquire
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C. 20001

>_____
>Harold D. Martin, # 368939